## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**CHARITY HALASZ AND THOMAS HALASZ, on behalf of their child, H.H., a minor,**

              *Plaintiffs,*

  v.

**CASS CITY PUBLIC SCHOOLS, in its official capacity; WILLIAM HARTZELL (in his official and individual capacity); ALLISON ZIMBA (in her official and individual capacity); DONALD MARKEL (in his official and individual capacity); STACEY BLISS (in her official and individual capacity),**

              *Defendants.*

**CASE NO. 1:22-cv-13158**

**COMPLAINT**
**(1) Due Process Violation**
**(2) Negligence**
**(3) Intentional Infliction of Emotional Distress**
**(4) Negligent Infliction of Emotional Distress**

**JURY TRIAL DEMANDED**

---

## COMPLAINT

## I. INTRODUCTION

This is an action arising from abuse through students, teachers, and administration occurring at Cass City High School in the Cass City Public Schools. Plaintiff is seeking damages for Defendant's violation of due process and protected rights under the Fourteenth Amendment. Defendants are also responsible for

negligence, negligent infliction of emotional distress and intentional infliction of emotional distress.

## II. PARTIES

1.    H.H. is a resident of the State of Michigan and was a student at Cass City High School in the Cass City Public Schools. Plaintiff at all times material to this litigation has been, and is presently, a minor child.

2.    The Complaint is filed by and through his mother, Charity Halasz ("Halasz"), and his father, Thomas Halasz ("Halasz"), on behalf of minor son H.H.

3.    Defendant Cass City Public Schools ("CCPS") is a public school district receiving federal funds in Cass City, Michigan.

4.    Defendant Allison Zimba was employed as the Superintendent of Cass City High School by CCPS at all times relevant to this litigation.

5.    Defendant William Hartzell was employed as Principal of Cass City High School by CCPS at all times relevant to this litigation.

6.    Defendant Donald Markel was employed as Vice Principal of Cass City High School by CCPS at all times relevant to this litigation.

7.    Defendant Stacey Bliss was on the Cass City School Board at all times relevant to this litigation.

### III.    JURISDICTION & VENU

8.    This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

9.    In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims.

10.    Defendant CCPS conducts business within the state of Michigan.

11.    All Individual Defendants on the grounds that they were employees of CCPS at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Michigan.

12.    Venue in this action is properly in the Eastern District of Michigan because the events relevant to this action occurred primarily within the geographical confines of the Eastern District of Michigan.

### IV.    FACTUAL ALLEGATIONS

13.    H.H. was a student at Cass City High School ("Cass") within the CCPS.

14.    On December 6, 2021, Cass students were shown an informational video on school shootings, specifically discussing the November 2021 Oxford High School shooting.

15.    Upon leaving science class later that day, H.H. made a comment about the Oxford video to his friend: "I can't believe [the shooter] made it out of the office with a gun in his bag."

16.    The statement H.H. made was heard by a female student ("R.B.").

17.    H.H. had an upset stomach and reported to the front office to call his mother or grandmother to pick him up.

18.    R.B. had contacted her mother, Defendant Bliss, stating she was afraid to be at school after hearing that H.H. had a weapon.

19.    H.H. did not have a weapon, nor did H.H. ever claim to have a weapon.

20.    The R.B.'s mother, Defendant Bliss, called the Cass City High School to report the information she had learned from her daughter about H.H. possessing a weapon on school grounds.

21.    H.H. was asked to wait in the office rather than be picked up by his grandmother, for Defendants to investigate the allegation.

22.    When H.H.'s grandmother arrived at the school, she was told that they "just need to talk to [H.H]".

23.    The office staff failed to mention anything about an investigation.

24.    At no time were Thomas and Charity Halasz notified of the investigation.

25.    H.H. was not read his rights prior to the start of the investigation.

26.    H.H. was not asked if he wished to have a parent present prior to the start of the investigation.

27.    Defendants Zimba, Defendant Markel and were accompanied by Michigan State Police Officer McComb while speaking with H.H. about the weapon.

28.    Defendant Zimba searched H.H.'s backpack with Defendant Markel and Officer McComb present.

29.    No weapon was found.

30.    H.H. complied when asked to remove his shoes, sweatshirt, pull his shirt up exposing his full torso and outstretch the elastic on both the waist and legs of his sweatpants.

31.    H.H. was embarrassed and shamed while being asked to remove clothing and expose his torso in front of both male and female school staff.

32.    Defendant Markel then informed Officer McComb that they would call the parents, then implicitly informing Officer McComb that they had not received prior parent permission.

33.    After having found no weapon on his person or in his possession H.H. was walked to his grandmother's car.

34.    Defendant Markel informed H.H.'s grandmother of the situation and sent them home without any further communication or expectation of communication to H.H.'s parents.

35.     When H.H.'s parents learned of the events, H.H. provided to his parents that Defendants had affirmatively portrayed to H.H. that his parents had given the school permission to conduct the investigation.

36.     Under the impression that his parents had given permission, H.H. complied with all Defendants requests during the investigation.

37.     H.H's parents contacted the school and spoke with Defendant Markel.

38.     Defendant Markel explained that the school failed to contact the parents because they "have to check out every suspicious situation" in the aftermath of the Oxford shooting.

39.     Later that day, State Police Officers, including Officer Hanson and an investigator, arrived at the Halasz's residence to investigate H.H. further.

40.     The officers searched H.H.'s room and questioned H.H. about other students at school, particularly about any bullying.

41.     The officers had previously checked H.H.'s social media and questioned other students at the school.

42.     Multiple students provided statements regarding H.H. and the allegations.

43.     The statements provided are inconsistent and unreliable.

44.     H.H.'s father questioned Officer Hanson about why the officer had allowed H.H. to be investigated at school without parent permission.

45.    The officer present, Officer McComb, was also under the impression that the school had received parent permission to investigate H.H.

46.    On December 7, 2021, the investigator called H.H.'s mother and asked to interview H.H. again about the exact statement H.H. had made at school on December 6, 2021.

47.    While the investigator was at the Halasz house, Defendant Markel called H.H.'s mother and said that the school had received the police report.

48.     At the present time, no report had yet been completed and available as the investigation was ongoing.

49.    Defendant Markel informed H.H.'s mother that the school needed H.H. to appear for an expulsion hearing on December 13, 2021.

50.    When the officers and investigator left the Halasz house, the investigator informed H.H.'s parents to report any additional instances of bullying.

51.    Later that night, H.H. and his parents reported a screenshot of a female student cyberbullying H.H. on social media saying, "just heard that [H.H.] was charged with terrorism".

52.    On December 13, 2021, Defendant Zimba, Defendant Hartzell, Defendant Markel, H.H., H.H.'s mother and father, and the Halasz attorney appeared for the expulsion hearing in front of the school board.

53.    Plaintiff was made aware that H.H.'s disciplinary history had been shared with the school board prior to the determination of H.H.'s guilt in the present accusations biasing the school board.

54.    Defendant Markel testified that he based his suspicion of H.H. on a student's report that stated that H.H. said he would bring a toy gun to school.

55.    Defendant Bliss was allowed to speak during the expulsion hearing, although she recused herself from voting as she deemed that portion of the hearing improper.

56.    Defendant Bliss biased the expulsion hearing.

57.    The board voted to expel H.H. for 180 days for threatening to bring a weapon to school.

58.    As a result of the investigation by the school and the officers, as well as poor treatment from teachers and students, H.H. suffered extreme weight loss, poor sleep and high stress.

59.    When H.H. did not return to Cass for the Spring 2022 semester, Cass City Public School employees were led to believe that H.H. had been arrested and charged.

60.    H.H. was unable to find acceptance into another school due to the wrongful expulsion conviction on his record.

61.    Due to the expulsion, H.H. has been denied the ability to engage in school athletics since the wrongful expulsion.

62.    CCPS and its employees were put on notice about the impending litigation on May 10, 2022.

## Respondeat Superior and Agency

63.    Plaintiffs restate each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

64.    Under Federal and Michigan law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

65.    At all times relevant to this action, all individual Defendants were employed by CCPS. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment with CCPS.

66.    At the time of this Complaint, only the individual Defendants themselves are aware of the exact role that each individual Defendant played in the events that are subject of the lawsuit. For this reason, only the individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

## V. CAUSES OF ACTION

## FIRST COUNT – VIOLATION OF DUE PROCESS UNDER 42 U.S.C. § 1983

67.     Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

68.     The Fourteenth Amendments of the U.S. Constitution provides, in pertinent part, that "no person shall be deprived of life, liberty, or property without the due process of law," which includes unreasonable searches and seizures.

69.     In this case, "public school officials may not subject students to searches and seizures unless they act upon a reasonable suspicion." *People v. Ward,* 233 N.W.2d 180, 182 (Mich. Ct. App. 1975).

70.     Defendants violated H.H.'s right to be free of unreasonable search and seizure by acting arbitrarily on one female student's baseless allegations.

71.     Defendants were giving the impression that they were acting in their role as school employees, therefore acting under the color of law.

72.     Defendants as persons working with children on a daily basis were aware that H.H. was entitled to freedom from unreasonable search and seizure.

73.     H.H. has been denied his due process rights by Defendants in violation of the Fourteenth Amendments in that Defendants Zimba and Markel forced H.H. to strip his clothing to search his person and his possessions.

74.    H.H. was not given the opportunity to present any meaningful defense on his own behalf.

75.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe mental and emotional distress.

76.    As a direct and proximate result of Defendants' actions, Plaintiff's education has been interrupted, disrupted and harmed.

77.    The actions of Defendants violated the provisions of 42 U.S.C. § 1983 in that they knowingly and willfully violated the civil rights of Plaintiff.

78.    Defendant CCPS as a public school district is vicariously responsible for actions of employees acting within the scope of their employment, requiring injunctive relief.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants;

(c)  Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)  Grant such other and further relief as justice requires.

## SECOND COUNT - NEGLIGENCE

79.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

80.   Under § 380.10 of the Michigan Revised School Code (Act 451 of 1976), public school employees have a duty to "serve the needs of the pupils by cooperating with the pupil's parents and legal guardians to develop the pupil's intellectual capabilities and vocational skills in a safe and positive environment."

81.   The individual Defendants failed to provide the safe and positive environment for H.H. and further failed to communicate with H.H.'s parents.

82.   Defendants breached their duty of reasonable care by negligently acting or omitting to act in such a way that resulted in a violation of Plaintiff's rights, which these Defendants knew or should have known posed a substantial risk of harm to Plaintiff.

83.   Defendants were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things:

    a.  Defendants Markel and Zimba failed to notify H.H.'s parents of the investigation and search of H.H.'s person and possessions;

    b.  Defendant Markel knowingly and intentionally misled H.H.'s parents when he informed them that the school had received a police report regarding the investigation of H.H.;

    c.  Defendants failed to determine whether "restorative practices would better address the student's misconduct" before suspending or expelling a student as required by CCPS policies.

84.    By their negligent conduct, Defendants inflicted extreme and severe emotional distress on H.H.

85.    Defendants' actions proximately caused H.H. emotional injuries.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)  Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)  Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants;

(c)  Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with prosecution of this action, including attorneys' fees; and

(d)  Grant such other and further relief as justice requires.

## THIRD COUNT – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Individual Defendants)

86.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

87.    Defendants' knowingly and intentionally failed to notify H.H.'s parents of the investigation while affirmatively portraying to H.H. that they had approved of the investigation caused H.H extreme emotional distress.

88.    Defendants' intentional actions of deceit by a person of authority caused H.H. extreme emotional distress.

89.    Defendants' could see, at the time of their actions, the harmful impact their actions had on H.H.

90.    Defendants' actions proximately caused H.H. injuries.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)  Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, humiliation, mental anguish, and emotional

distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)  Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants;

(c)  Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with prosecution of this action, including attorneys' fees; and

(d)  Grant such other and further relief as justice requires.

## FOURTH COUNT – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Individual Defendants)

91.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

92.    Defendants caused Plaintiff to be subject to a hostile learning environment through humiliation and deceit.

93.    Defendants knew or should have known that their actions would be injurious to Plaintiff.

94.     Defendants knew or should have known that their actions violated CCPS's policies.

95.     As a result of Defendants' actions, Plaintiff has been damaged financially and emotionally.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## VI.     JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 30, 2022                    Respectfully submitted,

Keith Altman, Esq. (P81702)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

*Attorney for Plaintiff*