UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARITY HALASZ and THOMAS HALASZ,
on behalf of their child, H.H., a minor,

       Plaintiff,

v.

CASS CITY PUBLIC SCHOOLS, et al.,

       Defendants.
_____/

Case No. 1:22-cv-13158

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL
PLAINTIFF'S INDEPENDENT MEDICAL EXAMINATION**

After being shown an informational video on school shootings, Plaintiff H.H., a minor student at Cass City High School, allegedly made comments which scared his classmates. In response, school officials searched Plaintiff's backpack and person without the consent or knowledge of his parents, and later expelled him from school. Plaintiff, through his parents, sued these officials, the Cass City Public School System, and members of the Cass City School Board, alleging Defendants' conduct caused Plaintiff "extreme and severe emotional distress." As a result of these alleged damages, this Court issued an Order, stipulated and agreed to by Plaintiff and all Defendants, providing for Plaintiff to attend an independent medical examination (IME) by Dr. Robert Fabiano. But, since this Court's Order, Plaintiff has refused to make the one hour and 45-minute drive from his home in Decker, Michigan to Brighton, Michigan—where Defendants have proposed the IME occur. So, Defendants filed a Motion to Compel Plaintiff's attendance at the examination in Brighton. Because the proposed location is within this judicial district and because

Plaintiff has not demonstrated that traveling to Brighton will pose undue burdens or hardship, Defendant's Motion will be granted.

I.

On December 30, 2022, Charity and Thomas Halasz filed a Complaint on behalf of their minor child, H.H. against Cass City Public Schools; William Hartzell, the Principal of Cass City High School (CCHS); Allison Zimba, the Superintendent of Cass City High School; Donald Markel, the Vice-Principal of Cass City High School; and Stacey Bliss, a Cass City School Board Member alleging the deprivation of H.H.'s Fourteenth Amendment Due Process rights (Count I); negligence (Count II); intentional inflection of emotional distress (Count III);[1] and negligent infliction of emotional distress (Count IV).[2] ECF No. 1.

According to Plaintiff's Complaint, on December 6, 2021, Plaintiff and his classmates at CCHS "were shown an informational video on school shootings[.]" *Id.* at PageID.3. After the video, Plaintiff alleges he told a classmate "I can't believe [the shooter] made it out of the office with a gun in his bag." *Id.* at PageID.4. Plaintiff further alleges that another classmate, R.B., heard the statement and told her mother, Defendant Bliss, that she was "afraid to be at school after hearing that H.H. had a weapon."[3] *Id.* Plaintiff's Complaint states that Defendant Bliss then reported to CCHS officials that her daughter thought Plaintiff had a weapon at school. *Id.* Plaintiff alleges that Defendants Zimba and Markel, along with Michigan State Police (MSP) Officer McComb spoke to Plaintiff about the weapon but did not read Plaintiff his rights, ask Plaintiff if he wanted his parents present, or notify Plaintiff parents. *Id.* at PageID.4–5. Plaintiff's Complaint

---

[1] Count III of the Complaint was only brought against the individual Defendants: Hartzell, Zimba, Markel, and Bliss. ECF No. 1 at PageID.14.
[2] This Count was also only brought against the individual Defendants. ECF No. 1 at PageID.15.
[3] Plaintiff states he "did not have a weapon, nor did [he] ever claim to have a weapon." ECF No. 1 at PageID.4.

states that Defendant Zimba searched Plaintiff's backpack and Plaintiff was asked to "remove his shoes, sweatshirt, pull his shirt up exposing his full torso and outstretch the elastic on both the waist and legs of his sweatpants" in front of "both male and female school staff." *Id.* at PageID.5. Plaintiff's Complaint further alleges "that Defendants had affirmatively portrayed to [Plaintiff] that his parents *had* given the school permission to conduct the investigation" and that Plaintiff "complied with all Defendants['] requests during the investigation" because he was "under the impression that his parents had given permission[.]" *Id.* at PageID.6 (emphasis added). After the search uncovered nothing, Plaintiff was sent home. *See id.*

Later that same day, Plaintiff alleges that MSP Officers McComb, MSP Officer Hanson, and "an investigator" arrived at Plaintiff's home, searched Plaintiff's room, and questioned Plaintiff about other students at school and about bullying. *Id.* at PageID.6. By this point, Plaintiff alleges, "the officers had previously checked [Plaintiff's] social media and questioned other students at the school." *Id.*

The next day, Plaintiff alleges that "the investigator" returned to Plaintiff's home and interviewed Plaintiff "about the exact statement [Plaintiff] had made at school." *Id.* at PageID.7. While the "investigator" was at Plaintiff's home, Plaintiff alleges that Defendant Markel called Plaintiff's mother and informed her that the CCHS "had received [a] police report"[4] and "needed [Plaintiff] to appear for an expulsion hearing on December 31, 2021." *Id.* Plaintiff's Complaint does not indicate whether Plaintiff received any other notice of this hearing.

Plaintiff attended the expulsion hearing with his parents and their attorney. *Id.* The hearing was conducted in front of the Cass City School Board and all individual Defendants were present.

---

[4] Plaintiff alleges, though, that "no report had yet been completed and available as the investigation was ongoing." ECF No. 1 at PageID.7.

*See id.* at PageID.7–8. Plaintiff's Complaint states that the School Board ultimately voted to expel Plaintiff for 180 days, but that Plaintiff did not return to CCHS and has been "unable to find acceptance into another school due to the wrongful expulsion conviction on his record." *Id.* at PageID.8.

Because Plaintiff's Complaint asserts mental, physical, and emotional injuries, *see* ECF No. 1 at PageID.13–15, this Court entered its August 16, 2023 Order directing Plaintiff to "attend an independent medical examination by psychologist, Dr. Robert Fabiano, at an agreed upon date and time to be scheduled by the [P]arties." ECF No. 10 at PageID.72. This Order was stipulated and agreed to in advance by Plaintiff and all Defendants. *Id.*

Pursuant to the Order, Counsel for Defendants emailed Plaintiff's Counsel on August 22, 2023, proposing the IME take place on "Friday, September 15, 2023 at 8:30 AM in Brighton, Michigan. ECF No. 12 at PageID.98. But Plaintiff's Counsel objected because "the location . . . is more than 100 miles from [Plaintiff's] residence. This doctor will either need to find a location closer to the [P]laintiff's home or find another doctor." *Id.* at PageID.97. Defendant's Counsel responded reminding Plaintiff that both Parties stipulated to Dr. Fabiano's examination and offered to reimburse Plaintiff for the milage to drive to the exam. *Id.* But Plaintiff's Counsel objected, again, insisting Plaintiff "will not drive nearly [three] hours each way. You can have your doctor go to Cass City. . . To be clear, the [Plaintiff] will not travel to Brighton." *Id.*

Thus, on September 8, 2023, Defendants filed a Motion seeking to compel Plaintiff's attendance at the IME with Dr. Fabiano, ECF No. 12. Defendants argue that Civil Rule 35, which governs medical examinations, "does not limit a party to a location for the examination" and emphasizes that the location of the IME is within the Eastern District of Michigan and is only "approximately an hour and forty-five minutes from the Plaintiff's residence." *Id.* at PageID.86.

Plaintiff responds that his "attendance at [the IME] will require the transportation and time away from employment of his parent" and that "Defendants['] offer to pay for milage . . . does not resolve the issue." ECF No. 13 at PageID.109–10. Plaintiff ultimately wants Defendants to "bring" Dr. Fabiano closer to him and reimburse Dr. Fabiano's travel expenses rather than Plaintiff's. *See id.* at PageID.110.

## II.

Under Civil Rule 35(a)(1), a court may "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). Although Civil Rule 35 requires a court order directing an IME to specify the examination's location, generally, "the Rule does not provide guidance for determining the *appropriate* location." *Vandergriff v. Red Robin Int'l, Inc.*, No. 1:14-CV-177-SKL, 2016 WL 1735857, at *2 (E.D. Tenn. May 2, 2016) (emphasis added). But "[c]ourts have interpreted Rule 35 to give them broad discretion in determining the details of the [IME], such as location." *Id.*; *see also Mansel v. Celebrity Coaches of Am., Inc.*, No. 2:13-CV-01497-JAD, 2013 WL 6844720, at *1 (D. Nev. Dec. 20, 2013) (noting courts have "broad discretion regarding the terms and conditions" of IMEs).

As both Parties recognize, neither the Sixth Circuit nor this Court have squarely addressed the lawful limits of a court's discretion in selecting an IME location. ECF Nos. 12 at PageID.86; 13 at PageID.109; *see also New v. Rush Truck Leasing, No*. 17-134-HRW, 2018 WL 3236991, at *2 (E.D. Ky. July 2, 2018) ("There is a dearth of caselaw from . . . the Sixth Circuit regarding the factors to consider in determining the location of an [IME.]"). But precedent from other judicial districts within the Sixth Circuit is instructive.

"The general rule is that mental or physical examinations" ordered under Civil Rule 35 "should occur in either the district where the case is pending or where the plaintiff resides." *Weeks v. Sands*, No. 20-CV-2709-TMP, 2021 WL 1269086, at *3 (W.D. Tenn. Apr. 6, 2021). But this general rule "is not absolute." *Vandergriff*, 2016 WL 1735857, at *2. "To be excepted from this general rule, a plaintiff must show that traveling to the examination poses undue burden or hardship." *Cameron v. Gutierrez*, No. CV 19-841 GJF/KK, 2020 WL 5326946, at *3 (D.N.M. Sept. 4, 2020) (internal quotations omitted); *see also New*, 2018 WL 3236991, at *2 ("The caselaw favors placing the burden []on the plaintiff to demonstrate that traveling to the examination poses an undue burden or hardship.") The Eastern District of Tennessee articulated a list of factors relevant to determining whether a plaintiff has met this burden. *See Vandergriff*, 2016 WL 1735857, at *2–3. These factors include: (1) the location of the physician of choice; (2) the undue burden or hardship based on the plaintiff's medical conditions; (3) the amount of time of travel that the plaintiff has been willing to undertake on his or her own while burdened with physical conditions; (4) the specific evidence from the plaintiff's doctor of the harm that would result from the travel to the IME; and (5) the specific medical expertise needed that is not available locally. *Weeks*, 2021 WL 1269086, at *3 (citing *Vandergriff*, 2016 WL 1735857, at *2–3).

### III.

As a threshold matter, Plaintiff's residence in Decker and Dr. Fabiano's office in Brighton are within the Eastern District of Michigan. *United States Attorney's Office Eastern District of Michigan: About Our District*, U.S. DEP'T OF JUST., https://www.justice.gov/usao-edmi/about-our-district#:~:text=The%2034%20counties%20in%20the,Saginaw%2C%20Saint%20Clair%2C%20Sanilac%2C (last updated March 3, 2022) [https://perma.cc/BY99-H34B]. Thus, Defendant's proposal accords with the "general rule" that IMEs take place within the district where

the case is pending or where the plaintiff resides. *Weeks*, 2021 WL 1269086, at *3; *see also Faynik v. Magical Cruise Co., Ltd.*, No. 617CV1282ORL37TBS, 2018 WL 7360664, at *1 (M.D. Fla. Aug. 2, 2018); *Mansel v. Celebrity Coaches of Am., Inc.*, No. 2:13-CV-01497-JAD, 2013 WL 6844720, at *2 (D. Nev. Dec. 20, 2013) (noting "the general rule is that plaintiff must travel to the forum where the action is brought" for an ordered IME).

Turning to the *Vandergriff* factors, even if Dr. Fabiano's office was not within the Eastern District of Michigan, Plaintiff has not demonstrated that traveling to Brighton for the IME poses an undue burden or hardship.

First, the location of Dr. Fabiano's Brighton office does not suggest undue hardship. Plaintiff's Counsel originally suggested that it would take Plaintiff three hours "each way" to drive to the office. ECF No. 12 at PageID.97. Not so. Dr. Fabiano's Brighton office is "approximately 105 miles" from Plaintiff's residence in Decker, Michigan and it would only take Plaintiff one hour and 45 minutes to drive there.[5] *Id.* at PageID.85; *see also* ECF No. 13 at PageID.109 (noting that it would take Plaintiff "upwards of two hours" to attend the IME). Additionally, the Brighton location "is closer to the Plaintiff's residence than many of the other counties within this district where the examination could occur[.]"[6]  ECF No. 12 at PageID.86.

---

[5] Notably this Court, like all federal courts, frequently requires people to make similar and lengthier drives to and from the courthouse each day when serving as a juror. And a juror's financial hardship in traveling to the courthouse or missing work is normally insufficient to excuse juror service. *See Information for Employers*, E.D. MICH., https://www.mied.uscourts.gov/index.cfm?pageFunction=juryEmployers#:~:text=The%20Court%20pays%20%2450.00%20per,mileage%20paid%20by%20the%20Court. (last visited Oct. 5, 2023) [https://perma.cc/4TKE-87YS] ("Financial hardship claimed as an excuse by an individual summoned for jury duty is not usually a valid reason for the Court to grant release from service. Unless there are some compelling reasons for that excuse, it will not be granted.")

[6] Defendants note the driving distance from Plaintiff's home to other counties in the Eastern District of Michigan including: "Alpena County (over three hours away), Cheboygan County (over three hours away), Crawford County (over two hours away), Iosco County (over two hours away),

Second, although Plaintiff asserts that traveling to Dr. Fabiano's Brighton office will be burdensome as one of Plaintiff's parents must miss work to drive Plaintiff to the IME, ECF No. 13 at PageID.110, this burden is mitigated—though not eliminated—by Defendants' offer to reimburse the cost of transportation. *See* ECF No. 12 at PageID.97. Further, it is worth noting that federal courts focus on *physical or medical* hardships; not the *economic* hardship that Plaintiff, let alone a Plaintiff's family members, may face in traveling to the IME location.[7] *See, e.g.*, *Vandergriff*, 2016 WL 1735857 (noting the relevant factor analyzes the undue burden or hardship on the plaintiff "based on the plaintiff's medical conditions" and denying an IME, in part, because the minor plaintiff showed she suffered "multiple seizures every day" and thus could not safely travel to the IME); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 107 (E.D.N.C. 1993) (denying an IME because a four hour drive to the IME location would be more than "mere inconvenience" for plaintiff, who was "wheel chair bound"). Indeed, although the Complaint alleges Defendants caused Plaintiff "extreme and severe emotional distress[,]" and "emotional injuries" ECF No. 1 at PageID.13–16, Plaintiff has not shown how this, or any other medical condition, would hinder his travels to Brighton for the IME.

The third and fourth *Vandergriff* factors are inapplicable. The Parties have not presented evidence of Plaintiff's travel despite the "extreme and severe emotional distress" he allegedly

---

Oscoda County (over two hours away), Otsego County (over two hours away), Isabella County (two hours away), and Roscommon County (two hours away)." ECF No. 12 at PageID.86–87.

[7] At least one federal case focused on the financial hardship posed by an IME location—but this case is distinguishable. In *Faynik*, 2018 WL 7360664, at *2 (M.D. Fla. Aug. 2, 2018), the Middle District of Florida denied a defendant's motion to compel an IME when the plaintiff, like Plaintiff here, complained that traveling to the IME location "would require her husband [who needed to accompany her] to miss two days of work, posing a financial hardship." But, unlike here, the proposed IME location was *outside* the judicial district in which the case was pending and there were several qualified professionals *inside* the district who could conduct the IME. *Id.* at *2–3.

suffers from and Plaintiff has not presented evidence that a doctor has advised against traveling to Brighton for the IME. *See generally* ECF Nos. 12; 13.

The fifth and final *Vandergriff* factor, assessing the availability of local qualified medical professionals, is neutral. Plaintiff argues the IME "does not require any special equipment" and "could . . . be completed remotely." ECF No. 13 at PageID.109. Perhaps. But Plaintiff's argument ignores the fact that Plaintiff already stipulated to "attend" an IME specifically with Dr. Fabiano. ECF No. 10.

In sum, Dr. Fabiano's Brighton, Michigan office is a reasonable location for Plaintiff's stipulated-to IME. The office is within this judicial district and Plaintiff has not shown that traveling to the office poses an undue burden or hardship.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion to Compel Attendance at Independent Medical Examination, ECF No. 12, is **GRANTED.**

Further, it is **ORDERED** that minor Plaintiff H.H. is **DIRECTED** to **ATTEND** an independent medical examination with psychologist Dr. Robert Fabiano at his Brighton, Michigan office, otherwise according to the terms of this Court's Order Granting the Parties' Stipulation for Medical Examination, ECF No. 10.

Further it is **ORDERED** that Defendants are **DIRECTED** to **REIMBURSE** Plaintiff for all transportation costs associated with traveling back and forth from Plaintiff's residence to Dr. Fabiano's Brighton office for the purpose of the independent medical examination.

**This is not a final order and does not close the above-captioned case.**

Dated: October 10, 2023                                 s/Thomas L. Ludington
                                                                        THOMAS L. LUDINGTON
                                                                        United States District Judge