UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARITY HALASZ and THOMAS HALASZ,
On behalf of their child, H.H., a minor;

        Plaintiffs,                    Case No. 1:22-cv-13158

v.                                      Honorable Thomas L. Ludington
                                      United States District Judge

CASS CITY PUBLIC SCHOOLS, et al.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS MOOT, AND SETTING SCHEDULING ORDER**

In December 2021, minor Plaintiff H.H. was expelled from Cass City Public Schools ("CCPS") in Cass City, Michigan after allegedly making a threatening remark about a gun. In December 2022, Plaintiff sued CCPS, as well as various members of the CCPS Administration and Cass City School Board. Confusingly, Count I of Plaintiff's initial Complaint is titled "violation of due process" yet largely alleges that Plaintiff was subject to an unconstitutional search and seizure when CCPS staff were investigating his alleged threat. Plaintiff now seeks leave to amend his Complaint, clarifying that Count I addresses the constitutionality of a December 6, 2021 search on Fourth Amendment grounds, and adding a separate Count alleging that Plaintiff's December 13, 2021 expulsion hearing was conducted without due process in violation of the Fourteenth Amendment. Because Plaintiff's motion for leave to amend is not the result of bad faith or undue delay, would not unduly prejudice Defendants, and is not futile, Plaintiff's request for leave to amend will be—as contemplated by the Federal Rules of Civil Procedure—"freely given."

## I.

At approximately 12:51 PM on November 30, 2021, a 15-year-old student opened fire at Oxford High School in Oxford Township, Michigan, killing four students, injuring six other students, and injuring a teacher. *Franz v. Oxford Cmty. Sch. Dist.*, No. 21-CV-12871, 2023 WL 3431223, at *3 (E.D. Mich. May 12, 2023). This case begins less than one week later, at a Michigan public school located less than 90 minutes away.

### A.  December 6, 2021 Threat and Investigation

On December 6, 2021, Plaintiff H.H. was an eighth-grade student at Cass City Public Schools ("CCPS"). ECF No. 17-2 at PageID.198. That morning, during first period, the CCPS Administration (the "Administration") showed all students an informational video about the Oxford school shooting to address growing concerns about student safety in the aftermath of the close-to-home tragedy. *Id.* at PageID.198–99; ECF Nos. 17-8 at PageID.571–72; 17-7 at PageID.453 (discussing how, after Oxford, schools across Michigan were the target of similar "copycat" threats). After the video, the Administration answered student questions about school safety. ECF No. 17-9 at PageID.620.

Two hours later, during Plaintiff's third-period science class, Plaintiff called his mother and asked to be picked up from school because he was feeling nauseous. *Id.* at PageID.623–24. Plaintiff's mother called Plaintiff's grandmother to ask if she could pick Plaintiff up from school. ECF No. 17-2 at PageID.201. Plaintiff's grandmother agreed, and Plaintiff's mother accordingly told the Administration. *Id.* Plaintiff then went to CCPS's main office and waited for his grandmother to arrive. ECF No. 17-9 at PageID.624. But the Michigan State Police arrived first. Unbeknownst to Plaintiff at the time, several CCPS students reported that, during third period, Plaintiff approached a group of four or five students at a long lab table and said something about

- 2 -

having a gun in his bag or bringing a gun to school. *See* ECF Nos. 17-10 at PageID.655, 658, 660, 663; 18-1 at PageID.712, 719, 724.

Plaintiff's precise comment is starkly disputed. Plaintiff avers he was discussing the Oxford shooting with other students at the table and said, "I can't believe the shooter made it out of the office with a gun in his bag." ECF No. 1 at PageID.4. But one student, D.H., maintains Plaintiff "said that he had guns and that if he brought them to the school, nobody would do anything about it[.]" ECF No. 17-10 at PageID.654–55. Another student, H.B., maintains Plaintiff said "something about[] bringing a fake but metal gun into school." ECF No. 17-11 at PageID.680. Yet another student, R.E., maintains that Plaintiff said "something about a gun in his bag[.]" ECF No. 18-2 at PageID.745. A fourth student, R.B., maintains Plaintiff said he "was thinking about bringing a gun to school." ECF No. 18-1 at PageID.711. And R.B. recalls she was particularly frightened because, before December 6, 2021, Plaintiff told R.B. and other classmates that he "hunts" and "has access to guns." *Id.* at PageID.729.

Regardless of Plaintiff's alleged specific language, R.B. texted her mother—Stacey Bliss—that Plaintiff's remark made her feel unsafe. ECF No. 18-3 at PageID.761. And R.B. and D.H. reported Plaintiff's remark to CCPS teachers. ECF Nos. 18-1 at PageID.712.; 17-10 at PageID.661. After receiving the text from her daughter R.B., Bliss—a Cass City School Board member—called CCPS Superintendent Allison Zimba and asked that she investigate. ECF No. 18-4 at PageID.860. Zimba then approached CCPS Principal William Hartzell, who had just received a phone call from another parent reporting Plaintiff's remark. ECF No. 17-8 at PageID.484. The two reported the incident to CCPS Behavioral Officer Donald Markel, who in turn alerted Michigan State Police (MSP) Lieutenant Brian McComb, who was already stationed in the CCPS parking lot in response to another, unrelated incident. ECF No. 17-7 at PageID.421–22.

At around 11:45 AM, Lieutenant McComb, Behavioral Officer Markel, and Superintendent Zimba searched and interviewed Plaintiff, who was already in the CCPS office waiting for his grandmother to pick him up. *Id.* at PageID.423; ECF No. 18-7 at PageID.956. Plaintiff denied making any threats about having or bringing a gun to school. ECF No. 18-7 at PageID.956. After less than ten minutes of questioning, ECF Nos. 17-4 at PageID.256; 17-7 at PageID.433, Plaintiff complied with requests to remove his sweatshirt and shoes.[1] ECF Nos. 17-7 at PageID.427; 18-4 at PageID.819, 822, 859–60. Superintendent Zimba searched Plaintiff's backpack, ECF No. 18-4 at PageID.819, and Behavioral Officer Markel searched Plaintiff's locker, ECF No. 17-4 at PageID.313. No firearm was found. ECF No. 18-7 at PageID.957. Plaintiff then left CCPS with his grandmother, who arrived at the school while Plaintiff was being questioned. ECF Nos. 18-4 at PageID.820, 823.

The school and MSP continued their respective investigations throughout the afternoon and evening on December 6, 2021. In the afternoon, after Plaintiff left school, Lieutenant McComb, Superintendent Zimba, and Behavioral Officer McComb interviewed several students who overhead Plaintiff's remark, including the students who had reported the remark to their teachers and parents. *See* ECF Nos. 17-7 at PageID.428; 18-7 at PageID.957–62 (reflecting eight interviews); 18-5 at PageID.895 (reflecting seven interviews). Later that evening, MSP Detective Cairnduff and two troopers searched Plaintiff's house. ECF No. 17-7 at PageID.434, 436.

---

[1] Plaintiff alleges that he was "asked to . . . pull his shirt up exposing his full torso and outstretch the elastic on both the waist and legs of his sweatpants." ECF No. 1 at PageID.5; *see also* ECF No. 17-9 at PageID.625. But Superintendent Zimba expressly denies this allegation, ECF No. 18-4 at PageID.820, and the other two individuals present during the December 6, 2021 search— Lieutenant McComb and Behavioral Officer Markel—do not recall asking Plaintiff to lift his shirt or outstretch his waistband. *See* ECF Nos. 17-4 at PageID.289–90; 17-7 at PageID.427. McComb's police report notably does not suggest Plaintiff was ever asked to lift his shirt or move his waistband. ECF No. 18-7 at PageID.957.

Although MSP officers observed a gun safe within Plaintiff's house—where Plaintiff notably admits he stores *his* hunting rifle, ECF No. 17-9 at PageID.625—MSP specifically concluded "no weapon [was] located" throughout the search of Plaintiff's house. ECF No. 18-6 at PageID.930. Based on this finding, MSP ultimately concluded that Plaintiff did not pose a threat to CCPS and shared this conclusion with Superintendent Zimba later in the evening. ECF Nos. 17-7 at PageID.435; 18-4 at PageID.829 (noting MSP's conclusion that "there was not any immediate danger in the school and no real threat of danger to anyone"). However, Zimba's contemporaneous investigative notes reflect that, although MSP "did not find enough information to *prosecute* [Plaintiff]," Lieutenant McComb told Zimba that MSP "did not feel comfortable with [Plaintiff] *remaining in school*." ECF No. 18-5 at PageID.895 (emphasis added); *see also* ECF No. 18-4 at PageID.814 ("Just because [MSP] didn't think that [Plaintiff] had access to weapons at home does not necessarily mean that he isn't a concern at our school."). And, although MSP concluded Plaintiff did not violate the *law*, the CCPS Administration—Superintendent Zimba, Principal Hartzell, and Behavioral Officer Markel—concluded Plaintiff violated the *CCPS code of conduct* by making a threatening remark about a gun. ECF No. 18-7 at PageID.957; *see also* ECF No. 17-2 at PageID.213.

### B. Cass City Public Schools Disciplinary Procedure

Before turning to how Plaintiff was disciplined for this remark, it is important to understand CCPS's complicated Student Discipline Code. The discipline of all CCPS students is governed by a "Point System," in which student misconduct has corresponding point values, which increase based on severity. The CCPS Student Handbook provides the following examples:

| Type of Misconduct | Points |
|---|---|
| Fake telephone call/note | 1 |
| Excessive display of affections | 1 |
| Excessive Unexcused Tardies | 1 |

| | |
|---|---|
| Improper dress/language | 1 |
| Violation of school/classroom rules | 1 |
| Leaving school/class without permission | 2 |
| Misuse of permits | 2 |
| Refusal to identify self to school personnel | 3 |
| Insubordination | 3 |
| Lack of cooperation with school personnel | 3 |
| Disruptive conduct | 3 |
| Persistent misbehavior | 3 |
| Bullying | 3-6 |
| Gross misbehavior | 6 |
| Trespassing (illegal entry) | 3 |
| Burglary | 6 |
| Use, possession, or distribution of tobacco | 6 |
| Extortion, blackmail, or coercion | 6 |
| Larceny | 6 |
| Fighting or provoking a fight | 6-9 |
| Possession of firecracker or incendiary device | 6 |
| Malicious mischief (property damage under $100) | 6 |
| Malicious mischief (property damage over $100) | 9 |
| Use, possession, or distribution of alcohol | 12 |
| False alarm | 12 |
| Illegal use of explosives | 12 |
| Bomb threat | 15 |
| Assault | 15 |
| Unauthorized sale, possession, or use of illegal or dangerous weapons | 15 |
| Arson | 15 |

ECF No. 17-5 at PageID.380–81. However, the Handbook provides that these examples "are not the only acts or conditions which will lead to disciplinary action nor do they limit this policy in any way." *Id.* at PageID.381. Although "all points [are] assessed by the [CCPS] principal or assistant principal," *id.* at PageID.381 (emphasis omitted), neither the Handbook nor the CCPS Student Discipline Code explain how clear evidence of misconduct must be to justify disciplinary points in the first instance, nor how the CCPS principal or assistant principal should determine *how many* points to assess against a student who violates a school rule not included on the Handbook's express list. Moreover, neither the Handbook nor the CCPS Student Discipline Code explain what rights, if any, students may have to contest individual point assessments.

With some exceptions, disciplinary points accumulate throughout the school year but reset each year. *See id.* And students "who do not accumulate points during any 30 school day[] period will have their point total reduced by three[] until it reaches zero[.]" *Id.* Importantly, a student is *not* disciplined each time he or she receives disciplinary points. But if a student's point total reaches certain thresholds, the Administration is required to initiate certain forms of discipline. A student with six points will be suspended for one day. *Id.* A student with nine points will be suspended for three days. *Id.* And a student with twelve points will be suspended for five days. *Id.* At the "[f]ifteen (15) point level," the Administration has three options:

(1) The Administration may initiate the "one point rule," such that a student will be subject to significant discipline if they acquire just "one more point;"
(2) The Administration may refer the student to the Cass City School Board for an expulsion hearing; or
(3) The Administration may suspend the student for 10 days and require a meeting with the student's parents before the student is "allowed back in school."

*Id.* Notably, the CCPS Student Handbook emphasizes that an expulsion hearing referral is particularly appropriate "in case[s involving] weapons and gross misbehavior violations." *Id.*

When the Administration decides to refer a student for an expulsion hearing before the Cass City School Board (the "Board"), the CCPS Superintendent "must" provide the student's parents or guardians with written notice of the hearing, along with (1) "the offense the student is suspected to have committed," and (2) "an explanation of the evidence" the Administration considered when concluding the student violated school rules and, separately, when recommending the specific consequence of expulsion. ECF No. 19-1 at PageID.1139. Moreover, this written notice must explain the student's rights at the scheduled expulsion hearing, which include the right to an attorney and the right to present evidence and call witnesses to contest both the Administration's factual finding of misconduct and the Administration's expulsion recommendation. *Id.*

An important, separate policy governs the Board's expulsion hearings. After the Board concludes that a student violated CCPS rules, the Board then considers what it refers to as "the Mandatory 7 Factors" when deciding whether the student should be expelled.  ECF Nos. 19-1 at PageID.1130; 17-8 at PageID.558. These factors include:

(1) The student's age and ability to know the difference between right and wrong;
(2) The Student's disciplinary history;
(3) Whether the student has a disability;
(4) The seriousness of the student's behavior or misconduct;
(5) Whether the student's behavior or misconduct posed a safety risk;
(6) Whether restorative practices "are a better option;" and
(7) Whether any lesser intervention would more appropriately address the student's behavior or misconduct.

*Id.*

### C. Plaintiff's Discipline

Before the Administration concluded Plaintiff made a threatening remark about a gun during school on December 6, 2021, Plaintiff had accumulated seven disciplinary points throughout his eighth-grade school year. Specifically, Plaintiff received three points on October 15, 2021 for calling another student a "stupid bitch," grabbing her, and touching her "boob" after the other student told Plaintiff to stop.[2] ECF No. 17-3 at PageID.236. On October 27, 2021, Plaintiff received one point for putting sticky notes on other students and refusing to follow teachers' repeated instructions that Plaintiff put his phone away. *Id.* at PageID.235. The next day, Plaintiff received one point for excessive tardiness. *Id.* On November 11, 2021, Plaintiff received one point after admitting that he told another student to "close her legs" while making a "waving

---

[2] Both Plaintiff and his mother maintain Plaintiff "never touched" the other CCPS student on October 15, 2021, and both disagree with CCPS's decision to issue disciplinary points because the other CCPS student kicked Plaintiff in the groin during the same incident. ECF Nos. 17-2 at PageID.209–10; 17-9 at PageID.616.

gesture." *Id.* Because this was Plaintiff's sixth point, he received an in-school suspension. *Id.* On

December 2, 2021, Plaintiff received an additional point—his seventh—for excessive tardiness.[3]

*Id.* at PageID.234.

On December 6, 2021, Behavioral Officer Markel assessed *eight points* against Plaintiff

for his comment about a gun, classifying Plaintiff's misconduct as "[g]ross misbeh[avior]." *Id.* at

PageID.230. Two questions remain on this point: (1) why did Markel categorize Plaintiff's alleged

misconduct as "gross misbehavior?" and (2) why did Markel decide to assess eight points against

Plaintiff, as opposed to any lesser amount? This last question is critical, because Plaintiff's eight-

point assessment increased his point total to 15, triggering the Administration to decide between

implementing the "one point rule," referring Plaintiff to the Board for an expulsion hearing, or

suspending Plaintiff for ten days. ECF No. 17-5 at PageID.381. Had Plaintiff been assessed even

one less point for his alleged "gross misbehavior," his case seemingly would not have been referred

to the Board, and he seemingly would not have been expelled.

Yet, on December 7, 2021, the Administration—Zimba, Hartzell, and Markel—decided to

refer Plaintiff's case to the Board with the recommendation that the Board expel Plaintiff for 180

days. *See* ECF Nos. 18-8 at PageID.967; 17-4 at PageID.258. That same day, Superintendent

Zimba sent Plaintiff's parents a letter outlining the Administration's decision and Plaintiff's due

process rights. ECF No. 18-8 at PageID.968–69. The letter also notified Plaintiff's parents that

---

[3] Plaintiff's Discipline Report documents several other instances of Plaintiff's misconduct, for which he did not receive any disciplinary points. For example, on September 22, 2021, Plaintiff was listening to music through earbuds during class and, when caught, refused to give the earbuds to his teacher, telling his teacher, "these are expensive and I am not giving them to you," "you have no right to tell me what to do," and "we'll just see what my mom has to say about this." ECF No. 17-3 at PageID.236. On November 19, 2021, Plaintiff used the elastic string on a facemask to "make a weapon" and, "like an arrow," "used this string to shoot a pencil at another student, lead facing the student." *Id.* at PageID.234.

Plaintiff's expulsion hearing was scheduled for December 13, 2021, and that Plaintiff would be suspended in the meantime. *Id.*

At the December 13, 2021 expulsion hearing, Plaintiff was represented by counsel, and appeared alongside his mother and father. ECF No. 17-2 at PageID.215–16. Board Member Stacey Bliss—the mother of R.B., who reported Plaintiff's remarks to Superintendent Zimba—was present at Plaintiff's expulsion hearing but abstained from voting. ECF No. 18-6 at PageID.908. Notably, Plaintiff and his attorney had the opportunity to present evidence that (1) Plaintiff did not make a threatening statement about a gun and (2) even if he did, an expulsion was unwarranted. *See* ECF No. 17-2 at PageID.215. But the Board concluded that, "based on the preponderance of evidence presented at the hearing," Plaintiff made a threatening remark about a gun in school, and after considering the "Mandatory 7 Factors," voted to expel Plaintiff for 180 days, as the Administration recommended. ECF No. 19-2 at PageID.1147.

Notably, and as reflected in the December 14, 2021 letter sent to Plaintiff's parents, Plaintiff may have been eligible for "reinstatement" at the conclusion of his suspension. ECF No. 19-2 at PageID.1147–48 (referring to ECF No. 19-1 at PageID.1140); *see also* MICH. COMP. LAWS § 360.1311(6). But Plaintiff never sought reinstatement. ECF No. 17-2 at PageID.219. Moreover, Plaintiff's mother concedes that CCPS provided Plaintiff access to virtual instruction throughout his expulsion but Plaintiff never enrolled, choosing instead to withdraw from CCPS and enroll in "My Virtual Academy." *Id.* at PageID.218–20.

### D. Procedural Posture

On December 30, 2022, Plaintiff's parents filed a Complaint on Plaintiff's behalf against Defendants (1) CCPS, (2) CCPS Principal William Hartzell, (3) CCPS Superintendent Allison Zimba, (4) CCPS Behavioral Officer Donald Markel, and (5) Cass City School Board Member

Stacey Bliss. ECF No. 1. In Count I, Plaintiff seemingly alleges Defendants Zimba and Markel unreasonably searched and seized him on December 6, 2021, in violation of his Fourth Amendment rights and 42 U.S.C. § 1983. *Id.* at PageID.10–12.  Confusingly, Count I of Plaintiff's initial Complaint is titled "Violation of Due Process Under 42 U.S.C. § 1983," but the substance of the allegations within Count I resemble a Fourth Amendment unreasonable search and seizure claim, rather than a Fourteenth Amendment procedural or substantive due process claim. See ECF No. 1 at PageID.10–12 (alleging "Defendants Zimba and Markel forced [Plaintiff] to strip his clothing to search his person and possessions" and "Defendants violated [Plaintiff]'s right to be free from unreasonable search and seizure"). Plaintiff also pursues Count I against Defendant CCPS in its capacity as a municipality. *Id.* at PageID.11. In Counts II, III, and IV, Plaintiff alleges the common law torts of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress, respectfully. *Id.* at PageID.12–16.

On January 30, 2024, all Defendants filed a joint motion for summary judgment. ECF No. 17. Beginning with Plaintiff's Fourth Amendment § 1983 claim, Defendants argue (1) that the December 6, 2021 search was both justified at its inception and reasonable in scope; and (2), in the alternative, all individual Defendants are entitled to qualified immunity and CCPS is not subject to municipal liability under *Monell*. *Id.* at PageID.151–59. Defendants then argue that Plaintiff's common-law tort claims all fail as a matter of law, and that all Defendants are otherwise entitled to immunity under Michigan's Governmental Tort Liability Act, MICH. COMP. LAWS § 691.1401 *et seq. Id.* at PageID.160–67.

In lieu of a response, Plaintiff filed a motion seeking leave to amend his Complaint on February 15, 2024, ECF No. 25. Plaintiff attached a copy of his Proposed Amended Complaint to his Motion. ECF Nos. 25-1; 25-2. Specifically, Plaintiff's Proposed Amended Complaint (1)

clarifies that Count I concerns the constitutionality of Defendants' alleged December 6, 2021

search and seizure, ECF No. 25-1 at PageID.1298–99, and (2) adds a new Count II, alleging that

Plaintiff's December 13, 2021 expulsion was without due process in violation of the Fourteenth

Amendment and 42 U.S.C. § 1983.[4] *Id.* at PageID.1300–03.

## II.

Courts "should freely give leave" to amend "when justice so requires." FED. R. CIV. P.

15(a)(2). Justice does not require leave to amend in the presence of (1) bad faith, undue delay, or

dilatory tactics; (2) lack of notice to the opposing party; (3) a repeated failure on behalf of the

movant to cure deficiencies by previous amendments; (4) undue prejudice to the nonmovant; or

(5) futility. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018) (citing

---

[4] The relief Plaintiff seeks on Count II of his proposed Amended Complaint is somewhat unclear. Plaintiff seeks actual damages, punitive damages, and attorney's fees, ECF No. 25-2 at PageID.1327, all of which are theoretically recoverable under § 1983. *See* 42 U.S.C. § 1988(b) (governing attorney's fee awards in § 1983 actions); *Carey v. Piphus*, 435 U.S. 247, 264 (1978) (noting plaintiffs can recover actual compensatory damages for violations of constitutional rights so long as the plaintiff proves actual injury caused by the constitutional violation); *Smith v. Wade*, 461 U.S. 30, 56 (1983) (noting punitive damages are recoverable in § 1983 actions when a plaintiff shows that the defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights"). But Plaintiff also seeks an injunction "prohibiting the Defendants' wrongful actions." ECF No. 25-2 at PageID.1327. What does this mean, specifically? Plaintiff does not say. As Defendants note in their joint Response, ECF No. 26 at PageID.1353–54, Plaintiff lacks Article III standing to request an injunction compelling CCPS to *change* its expulsion policies because Plaintiff does not allege—and the record does not show—that Plaintiff would be subject to such policies in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (noting plaintiffs seeking an injunction must demonstrate a "real and immediate threat" of a future deprivation of constitutional rights to afford Article III standing); *Newsome v. Batavia Loc. Sch. Dist.*, 842 F.2d 920, 923 (6th Cir. 1988) (applying *Lyons* and holding plaintiff did not have Article III standing to seek an injunction changing school board expulsion policy because plaintiff "d[id] not allege—and [the court] cannot presume—that [plaintiff] will again be brought before the school board in another expulsion hearing"). However, Plaintiff may have Article III standing to seek an injunction compelling the CCPS Administration and Board to, for example, remove his expulsion from his permanent record. Regardless, Plaintiff's largely unclear request for an injunction—and whether he has standing for his request—are beyond the scope of this Court's futility review and can be further briefed by the Parties throughout future dispositive motions.

*Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Farr v. Dividend Solar Fin*., LLC, No. 1:23-CV-11729, 2024 WL 775171, at *2 (E.D. Mich. Feb. 26, 2024). The decision to grant or deny leave to amend is "'left to the sound discretion of the trial judge.'" *Glob. Lift Corp. v. Hiwin Corp*., No. 14-CV-12200, 2016 WL 5476238, at *3 (E.D. Mich. Sept. 29, 2016) (quoting *Robinson v. Michigan Consol. Gas Co. Inc*., 918 F.2d 579, 591 (6th Cir. 1990)).

### III.

Plaintiff may file his Proposed Amended Complaint, which largely clarifies—rather than compounds—the allegations he already pleaded within his initial Complaint. Defendants assert three arguments to the contrary. None are persuasive.

### A. Undue Delay and Prejudice

Defendants first two arguments are related and can be disposed of in tandem. Focusing on Plaintiff's proposed due process claim, Defendants argue that Plaintiff waited "over thirteen[] months" after filing his initial Complaint before seeking leave to amend, and sought leave to add this "new" due process claim only *after* discovery closed and Defendants filed their dispositive motion for summary judgment, such that both undue delay and undue prejudice are present. ECF No. 26 at PageID.1346–47. Neither are.

Defendants are correct that Plaintiff did not seek leave to amend his Complaint until February 2024, nearly thirteen months after Plaintiff filed his Complaint in December 2022. *Compare* ECF No. 25 *with* ECF No. 1. But this delay was not undue. After both Parties stipulated to adjourn the Scheduling Order, discovery closed on January 17, 2024, and a Settlement Conference was scheduled for January 31, 2024. ECF No. 11. Although the dispositive motion cutoff was not until February 20, 2024, *id.*, Defendants filed their joint motion for summary judgment on the eve of the scheduled Settlement Conference. ECF No. 17. At the January 31, 2024

Settlement Conference, the Parties discussed Defendants' motion for summary judgment, which—like this Court—interpreted Count I of Plaintiff's initial Complaint to allege violations of the Fourth, rather than the Fourteenth, Amendment, contesting Plaintiff's December 6, 2021 search rather than his December 13, 2021 expulsion. Plaintiff's Counsel disagreed, contending that due process, related to Plaintiff's expulsion, was at the very core of his client's case and was adequately pleaded in Count I of Plaintiff's initial Complaint. Accordingly, Plaintiff's Counsel notified Defense Counsel and this Court on January 30, 2021—nearly one month before the dispositive motion cutoff—that he would file the instant motion to amend, which he promptly filed soon after. *See* ECF No. 25.

On this point, Defendants argue (1) Plaintiff's Complaint did not put them on sufficient notice that Plaintiff was pursuing "a due process claim relating to the expulsion hearing," such that (2) "discovery was not conducted on that basis." ECF No. 26 at PageID.1348. But neither assertion is accurate. Plaintiff's initial Complaint is flush with factual allegations regarding his December 13, 2021 expulsion hearing. For example, Plaintiff's initial Complaint alleges:

(1) On December 13, 2021, Defendant Zimba, Defendant Hartzell, Defendant Markel, [Plaintiff], [Plaintiff]'s mother and father, and [Plaintiff's] attorney appeared for the expulsion hearing in front of the school board[;]
(2) Plaintiff was made aware that [his] disciplinary history had been shared with the school board prior to the determination of [his] guilt in the present accusations biasing the school board[;]
(3) Defendant Markel testified [at the expulsion hearing] that he based his suspicion of [Plaintiff] on a student's report that stated that [Plaintiff] said he would bring a toy gun to school[;]
(4) Defendant Bliss was allowed to speak during the expulsion hearing, although she reclused herself from voting as she deemed that portion of the hearing improper[;]
(5) Defendant Bliss biased the expulsion hearing[;]
(6) The board voted to expel [Plaintiff] for 180 days for threatening to bring a weapon to school[;]
(7) [Plaintiff] was unable to find acceptance into another school due to the wrongful expulsion conviction on his record[;]

(8) Due to the expulsion, [Plaintiff] has been denied the ability to engage in school athletics since the wrongful expulsion.

ECF No. 1 at PageID.6–8.

Moreover, although the thrust of Count I of the initial Complaint seemingly pleaded a *Fourth* Amendment claim related to Plaintiff's December 6, 2021 search, Count I was expressly titled "Violation of *Due Process* Under 42 U.S.C. § 1983." *Id.* at PageID.10 (emphasis omitted, italics added). In addition to its title, Count I recited the text of the Fourteenth Amendment due process clause and thereafter alleged that Plaintiff "was not given the opportunity to present any meaningful defense on his behalf," and that Defendants "act[ed] arbitrarily[.]" *Id.* at PageID.10–11. Indeed, nearly all allegations within Count II of Plaintiff's proposed Amended Complaint—asserting a separate due process claim—were already pleaded throughout the initial Complaint. *Compare* ECF No. 1 at PageID.6–8, 10–11 *with* ECF No. 25-1 at PageID.1301–03.

Despite Defendants' argument to the contrary, the record reveals the Parties engaged in extensive discovery in response to the initial Complaint's expulsion allegations. The Parties deposed Defendant and Board Member Stacey Bliss, who testified at length about the Board's expulsion policies, generally, and her role in Plaintiff's expulsion, specifically. *See generally* ECF No. 18-6. The Parties also deposed Board President Janie Meeker and Board Vice President Emily Lasceski, two non-parties who both voted at Plaintiff's December 13, 2021 expulsion hearing. ECF Nos. 18-9; 18-10. And both witnesses testified *exclusively* and *extensively* about Plaintiff's expulsion, the Board's conclusions and reasoning, and whether Plaintiff's expulsion accorded with the Board's interpretations of due process, as outlined in relevant Board policies. *See generally id.* Although Defendants argue that Plaintiff "and his parents were not questioned regarding the details of the expulsion hearing at their depositions," ECF No. 26 at PageID.1348, the record reveals the exact opposite: Defense Counsel explicitly asked both Plaintiff and his mother several questions

about the expulsion hearing. *See* ECF Nos. 17-2 at PageID.214–18 (asking Plaintiff's mother about how she was notified about the hearing, the hearing itself, whether Plaintiff's attorney presented evidence, and whether the hearing was public or private); 17-9 at PageID.637 ("Tell me about the expulsion hearing. What happens?"), PageID.636–40 (asking Plaintiff about who was present at the hearing, how long the hearing lasted, and whether anyone presented evidence on Plaintiff's behalf). And Zimba, Hartzell, Markel, and McComb testified about Plaintiff's expulsion and CCPS expulsion procedure during their depositions, too. *See generally* ECF Nos. 17-4; 17-7; 17-8;18-4.

On top of the substantial testimonial evidence, the record also contains significant documentary evidence relevant to Plaintiff's expulsion. Plaintiff has provided an audio recording of the entire expulsion hearing. *See* ECF No. 18-4 at PageID.792. The record also contains both letters sent by the Administration to Plaintiff and his parents outlining his expulsion hearing,  as well as all relevant Administration and Board expulsion policies.[5] *See* ECF Nos. 17-5 at PageID.380–82; 18-2; 19-2.

In sum, neither undue delay nor undue prejudice preclude Plaintiff's request for leave to amend his Complaint.

## B. Futility

Defendants also argue that Plaintiff's proposed Count II—whether construed as a procedural or substantive due process claim—is futile because "neither claim would survive a Motion for Summary Judgment." ECF No. 26 at PageID.1349. But Defendants apply an incorrect standard. "A proposed amendment is futile if the amendment could not withstand a *Rule 12(b)(6) motion to dismiss*." *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000)

---

[5] Despite the significant expulsion evidence on the record, Defendants are free to file a motion for additional discovery to the extent they feel additional discovery is needed on Plaintiff's newly-added due process claim.

(emphasis added). So, at this juncture, Plaintiff's proposed Amended Complaint need only show "sufficient factual matter, accepted as true," to state a facially plausible due process claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plaintiff's proposed Count II states a valid procedural due process claim, so Plaintiff's proposed amendment is not futile, and this Court need not analyze whether Count II additionally states a valid substantive due process claim.

The Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Procedural due process, "at its core requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012). By expelling him from CCPS, Defendants deprived Plaintiff of routinely recognized property and liberty interests. *Goss v. Lopez*, 419 U.S. 565 (1975) (noting expulsion is a significant deprivation of a student's "property interest in educational benefits" and a student's "liberty interest in reputation"). The only question is whether Plaintiff's proposed Amended Complaint plausibly alleges this deprivation occurred without adequate process.

On this point, it is well-settled that the Fourteenth Amendment protects students from "unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Goss v. Lopez*, 419 U.S. 565, 581 (1975) *accord Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 566 (6th Cir. 2011); *see also Barnett ex rel. Barnett v. Tipton Cnty. Bd. of Educ.*, 601 F. Supp. 2d 980, 985 (W.D. Tenn. 2009) ("School officials must tailor disciplinary hearing procedures to avoid unfair or

mistake findings of misconduct and arbitrary exclusions from school." (internal quotations omitted)). Plaintiff's proposed Amended Complaint alleges two ways in which his expulsion hearing was unfair, and that the expulsion itself was based on mistaken findings of fact.

**i.**

First, Plaintiff alleges his expulsion was arbitrary and he was deprived of a *meaningful* opportunity to be heard at his hearing because Defendant Zimba—a member of the CCPS Administration—*knew* that MSP concluded Plaintiff "may have been misunderstood" and posed "no real threat of danger to anyone," ECF Nos. 18-4 at PageID.829; 25-2 at PageID.1319, yet *did not share* this conclusion with Plaintiff, Plaintiff's Counsel, or the Board before Plaintiff's expulsion hearing.[6] ECF No. 25-1 at PageID.1301–02.

This nondisclosure is particularly concerning because, under express provisions of the Board's own expulsion policies, it was *required* to assess Plaintiff's safety risk when deciding whether to expel him or implement some lesser consequence. ECF No. 19-1 at PageID.1130–31. True, Plaintiff's threat to CCPS safety was only one of seven factors the Board was required to consider. ECF Nos. 19-1 at PageID.1130–31; 17-8 at PageID.558. But the material or dispositive nature of this fact and factor are issues for summary judgment, beyond the scope of this Court's

---

[6] Discovery largely confirmed this factual allegation. Defendant Zimba testified that, as reflected in an MSP report, Lieutenant McComb told her on the evening of December 6, 2021 that, based on MSP's investigation and search of Plaintiff's house, MSP concluded "there was not any immediate danger in the school and no real threat of danger to anyone." ECF No. 18-4 at PageID.829. Yet both Defendants Hartzell and Markel testified that Zimba did not share this conclusion with them before the three decided to refer Plaintiff for an expulsion hearing before the Board. ECF No. 17-8 at aPageID.523; 17-4 at PageID.257–58. And Defendant Bliss testified that Zimba similarly did not share the conclusion with the Board before the expulsion hearing, ECF No. 18-6 at PageID.928–30.

futility review.[7] Importantly, Plaintiff also alleges that Defendants did not explain *why* Plaintiff was expelled, as opposed to some other form of punishment. ECF No. 25-1 at PageID.1302 (alleging "Defendants were required to provide a written report of the seven factors the Board was to consider in the expulsion hearing" but "[a] report on the seven factors . . . was never completed"). So, it is entirely plausible that, had Zimba shared MSP's conclusions with the Board and Plaintiff, the Board may not have expelled Plaintiff. Without this evidence, Plaintiff's "opportunity to be heard" at his expulsion hearing may not have been "meaningful," and his expulsion may have been based on mistaken findings of fact and, thus, unwarranted. *See Goss v. Lopez*, 419 U.S. 565, 579–80 (1975) ("The Due Process Clause will not shield [a student] from [expul]sions properly imposed, but it disserves both his interest and the interest of the State if his [expul]sion is in fact unwarranted.").

### ii.

Second, Plaintiff alleges he did not have a meaningful opportunity to be heard at his expulsion hearing because the Board was biased. "Procedural due process is not satisfied when . . . the individual responsible for deciding whether to deprive [a] person of his interest is biased." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 566 (6th Cir. 2011). Indeed, "a biased decisionmaker [is] constitutionally unacceptable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Although school officials responsible for deciding whether to exclude a student must be impartial, "[i]t is[] well established that school disciplinary committees are entitled to a presumption of impartiality, absent a showing of actual bias." *Doe v. Cummins*, 662 F. App'x 437, 449 (6th Cir. 2016). So, to "survive a motion to dismiss," Plaintiff must allege "specific, non-conclusory facts"

---

[7] Both Board members deposed in this case—Bliss and Meeker—agree that MSP's conclusion, although not necessarily dispositive, would have been important when deciding whether to expel Plaintiff. ECF Nos. 18-6 at PageID.911; 18-9 at PageID.990, 1014–15.

which, taken as true, plausibly show a decision-maker's actual bias, such as a "'personal animosity, illegal prejudice, or a personal or financial stake in the outcome.'" *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 658 (S.D. Ohio 2016) (quoting *Ikpeazu v. Univ. of Nebraska*, 775 F.2d 250, 254 (8th Cir. 1985); *see also Park v. Temple Univ.*, 757 F. App'x 102, 108 (3d Cir. 2018) (concluding that plaintiff's "adequately pled" allegations which plausibly suggested a board member's bias in an expulsion hearing should have survived a motion to dismiss, even if "[t]he allegations . . . turn out to be totally unfounded" throughout discovery).

Plaintiff's proposed Amended Complaint specifically alleges the Board was biased both because (1) it prematurely reviewed Plaintiff's disciplinary history before analyzing the evidence relevant to whether Plaintiff, in fact, made a specific threatening remark on December 6, 2021, and (2) it allowed Defendant Bliss to speak during Plaintiff's hearing, despite her recusal from voting. ECF No. 25-2 at PageID.1325.

Only the former is a specific, non-conclusory factual allegation that plausibly suggests the Board could have been biased. The Supreme Court has expressly recognized "prejudgment" as a form of bias that may rebut the presumption that a disciplinary decisionmaker is impartial. *Withrow v. Larkin*, 421 U.S. 35, 54 (1975); *see also Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019); *Plummer v. Univ. of Houston*, 860 F.3d 767, 776 (5th Cir. 2017), *as revised* (June 26, 2017). Here, it is at least plausible—even if only slightly so—that the Board may have prejudged Plaintiff by reviewing his disciplinary history before considering the evidence of whether Plaintiff actually made a specific remark about a gun at school on December 6, 2021.[8]

---

[8] Although this Court cannot consider the substance of Plaintiff's disciplinary report on futility review, the report notably contained ten instances of Plaintiff's misconduct in the three months preceding his expulsion hearing. *See* ECF No. 17-3 (documenting, for example, four instances of Plaintiff's tardiness).

Unlike Plaintiff's allegation that the Board prematurely considered his disciplinary history, the allegation that the Board "allowed Defendant Bliss to speak"—even when assumed true—does not plausibly reveal the Board's bias. Plaintiff concedes Bliss "recused herself from voting." ECF No. 25-1 at PageID.1319; *see C.Y. ex rel. Antone v. Lakeview Pub. Sch.*, 557 F. App'x 426, 434 (6th Cir. 2014) ("It does not violate due process for school administrators [who investigated the alleged misconduct] to communicate ex parte with the Board, or even to participate in the Board's deliberation.") Moreover, nothing in Plaintiff's proposed Amended Complaint suggests Defendant Bliss actually spoke at the hearing, nor that her mere *presence* biased the Board in any way.[9]

In sum, at least two factual allegations within Plaintiff's proposed Amended Complaint plausibly suggest that Plaintiff was denied procedural due process when he was expelled from CCPS: (1) Defendant Zimba—the CCPS Superintendent—did not share MSP's conclusion that Plaintiff was not a threat to CCPS safety from the Board, which was expressly required to consider this factor throughout deciding whether Plaintiff should be expelled or subject to some other, lesser punishment; and (2) the Board reviewed Plaintiff's disciplinary history before analyzing the evidence relevant to whether he actually made a threatening statement about a gun at school on December 6, 2021. Thus, Count II of Plaintiff's proposed Amended Complaint is not futile and Plaintiff will be granted leave to amend. Accordingly, Plaintiff's Motion for leave to amend will be granted, Defendants' Motion for Summary Judgment will be denied as moot, *Sango v. Johnson*, No. 13-12808, 2014 WL 4658385 (E.D. Mich. Sept. 17, 2014), *aff'd* (Nov. 5, 2015), and this Court will set a scheduling order.

---

[9] Notably, Defendant Bliss testified at her deposition that, in addition to abstaining from voting, she did not discuss Plaintiff's expulsion with *any* other Board member at *any* time. ECF No. 18-6 at PageID.908.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Motion for Leave to Amend, ECF No. 25, is

**GRANTED.**

Further, it is **ORDERED** that Plaintiff is **GRANTED LEAVE** to file his Amended

Complaint as referenced, ECF No. 25-2, **on or before September 6, 2024.**

Further, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 17, is

**DENIED AS MOOT.**

Further, it is **ORDERED** that the Parties are **DIRECTED** to abide by the following

dispositive motion briefing schedule:

| | |
|---|---|
| Dispositive Motion Cutoff: | October 7, 2024 |
| Response Deadline: | October 21, 2024 |
| Reply Deadline: | November 4, 2024 |
| Rule 26(a) Disclosures Date: | January 6, 2025 |
| Motions in Limine Due: | January 14, 2025 |
| Pretrial Submissions Due: | February 18, 2025 |
| Final Pretrial Conference: | February 25, 2025 at 2:00 PM |
| Jury Trial: | March 18, 2025 at 8:30 AM |

**This is not a final order and does not close the above-captioned case.**

Dated: September 4, 2024                          s/Thomas L. Ludington
                                                                    THOMAS L. LUDINGTON
                                                                    United States District Judge